# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRIE JO FLORES, | Case No. 1:18-cv-01523-SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| ANDREW SAUL,<br>Commissioner of Social Security,[1] | |
| Defendant. | (Doc. 1) |
| _____/ | |

## I. INTRODUCTION

On November 1, 2018, Plaintiff Terrie Jo Flores ("Plaintiff") filed a complaint under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila

---

[1] On June 17, 2019, Andrew Saul became the Commissioner of the Social Security Administration. *See* https://www.ssa.gov/agency/commissioner.html (last visited by the court on September 12, 2019). He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

K. Oberto, United States Magistrate Judge.[2]

## II. BACKGROUND

On February 24, 2015, Plaintiff protectively applied for DIB, alleging disability beginning on October 15, 2009, due to lupus, fibromyalgia, chronic pain, depression, herniated disc at L1–L3, tendinitis, anxiety, and high blood pressure (Administrative Record ("AR") 23, 74, 82, 97, 227, 241.) Plaintiff was born on March 7, 1965 and was 44 years old on the alleged disability onset date. (AR 30, 74, 97, 201, 238, 274, 293). Plaintiff has a high school education and can communicate in English. (AR 30, 226, 228, 240, 242, 276.)

### A.   Relevant Medical Evidence[3]

On September 16, 2015, licensed psychologist Lanita Barnes, Psy.D., performed a comprehensive psychiatric examination of Plaintiff. (AR 905–10.) She observed Plaintiff to be well-dressed and in the company of a chihuahua, whom she stated was a service dog. (AR 905.) Plaintiff appeared agitated but was "superficially friendly and cooperative" throughout the evaluation. (AR 905.) She complained of symptoms of depression since 2009 and attempted suicide on two occasions, resulting in a hospitalization. (AR 905–06.) Plaintiff reported that she does nothing during the day and to care for herself. (AR 907.) She stated that she does not engage in household chores or cooking. (AR 907.) Plaintiff reported that she attends church "sometimes," accesses the internet daily, and drives her car "when necessary." (AR 907.)

Upon mental examination, Dr. Banes found Plaintiff "somewhat preoccupied" with her physical and mental condition and "presented with some circumstantiality as well." (AR 907.) Plaintiff described having suicidal ideation and thoughts but stated that she didn't think she would "do it." (AR 908.) Plaintiff was "slightly agitated" with anger and some tearfulness and "appeared with frustration regarding her mental status and physical condition." (AR 908.) She reported her moods were frustrated and "sometimes depressed," and presented with mild anxiety, anger, and agitation. (AR 908.)

Dr. Barnes found Plaintiff had good concentration and focus and she demonstrated both

---

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 6, 7.)

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

abstraction and the ability to generalize concepts in her thinking. (AR 909.) Plaintiff's judgment and insight were both good, although she was "preoccupied with her circumstances." (AR 909.) Dr. Barnes assessed Plaintiff with a depressive disorder due to another medical condition, with depressive features, and an unspecified personality disorder. (AR 909.)

According to Dr. Barnes, Plaintiff appeared at times to "over-endorse symptoms" and reverted every subject that was presented to a description of her disabling pain and injuries. (AR 909.) She noted that "[d]ue to the alignment of her mood symptoms to her medical condition, she is not expected to significantly improve over the next 12 months." (AR 909.)

Dr. Barnes opined that Plaintiff is mildly impaired in the following ways: the ability to perform detailed and complex tasks; the ability to perform work activities on a consistent basis without special or additional instruction; and the ability to maintain regular attendance in the workplace. (AR 910.) Plaintiff is moderately impaired in the following: the ability to accept instruction from supervisors or others; the ability to interact with coworkers and/or the public; and the ability to complete a normal workday or workweek without interruption from a psychiatric condition. (AR 910.) Dr. Barnes further opined that Plaintiff is moderately to severely impaired in her ability to manage stressors in the workplace. (AR 910.)

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on October 26, 2015, and again on reconsideration on February 26, 2016. (AR 134–37, 141–46.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 147–63.) The ALJ conducted a hearing on October 6, 2017. (AR 38–73.). Plaintiff appeared at the hearing with her counsel and testified. (AR 44–59.) Plaintiff's husband (AR 59–67) and vocational expert (AR 67–70) also testified.

**C.     The ALJ's Decision**

In a decision dated December 6, 2017, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 19–31.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 21–31.) The ALJ decided that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of October 15, 2009 through her date

last insured of December 31, 2015 (step one). (AR 21.) At step two, the ALJ found Plaintiff's following impairments to be severe: lupus, valley fever, fibromyalgia, borderline personality disorder, and substance abuse. (AR 21.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 22.)

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[4] and applied the RFC assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform less than the full range of light work as defined in 20 CFR [§] 404.1567(b). Specifically, [Plaintiff] is limited to the following: lifting and carrying 20 pounds occasionally and 10 pounds frequently; occasional climbing ramps, stairs, balancing, kneeling, crouching, crawling, no climbing ladders, ropes or scaffolds, no more than occasional overhead reaching, avoid even moderate exposure to hazards, unprotected heights and dangerous machinery, and limited to simple repetitive tasks with occasional public contact.

(AR 22–23.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" she rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record." (AR 24.)

The ALJ found that Plaintiff could not perform her past relevant work as a school secretary. (AR 29–30). Nonetheless, the ALJ determined that Plaintiff could perform alternate jobs that exist in significant numbers in the national economy, such as mail sorter, photocopy machine operator, and marker. (AR 30–31). Ultimately, the ALJ concluded that Plaintiff was not disabled at any time through the date of her decision. (AR 31)

Plaintiff sought review of this decision before the Appeals Council, which denied review

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

4

on September 5, 2018. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

### III. LEGAL STANDARD

**A. Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 404.1520(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [his] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098). "Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record

that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins*, 466 F.3d at 885). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

**IV. DISCUSSION**

Plaintiff contends that the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, for implicitly rejecting the opinion of consultative examiner Dr. Barnes that Plaintiff would have moderate limitations completing a normal workday or workweek due to her mental condition, moderate difficulties accepting instruction from supervisors and interacting with coworkers, and moderate to severe difficulty dealing with stress encountered in the workplace. (Doc. 11 at 5.) The Court agrees.

///

**A. The ALJ Did Not Properly Account for the Consultative Psychologist's Opinion in Determining Plaintiff's Residual Functional Capacity**

**1. Legal Standard**

The weight given to medical source opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Holohan v. Massanari*, 246 F.3d 1195, 1201–02 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. *Holohan*, 246 F.3d at 1202.

An ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester*, 81 F.3d at 830; *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Even if a treating or examining physician's opinion is contradicted, that opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830–31. The ALJ can meet this burden by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

**2. Analysis**

In his decision, the ALJ specifically noted Dr. Barnes' opinion regarding Plaintiff's moderate limitations in her ability to accept instruction from supervisors or others and to interact with coworkers and/or the public, moderate difficulties in completing a normal workweek without interruption from a psychiatric condition, and moderate to severe limitation in managing stressors in the workplace, and purported to give "great weight" to the opinion. (AR 28, 29.) The ALJ explained that she gave Dr. Barnes' opinion such weight because it is "consistent with objective findings." (AR 29.) However, nothing in the ALJ's RFC, including the limitation to "simple repetitive tasks with occasional public contact" (AR 23), accommodates Dr. Barnes' opined moderate and severe impairments. While the ALJ need not accept the full extent of Dr. Barnes' opinion, the ALJ may not reject it, or significant parts of it, without giving specific and legitimate reasons for doing so. *See Lester*, 81 F.3d at 830-31. Accordingly, the ALJ erred by not providing

specific and legitimate reasons, supported by substantial evidence, for implicitly rejecting significant portions of Dr. Barnes' opinion. *See, e.g., Bain v. Astrue*, 319 F. App'x. 543, 545–46 (9th Cir. 2009) (remanding where the ALJ failed to either discredit or incorporate the limitations enumerated by the state agency consultant, including that the opinion that claimant was moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors); *Barnes v. Colvin,* CASE NO. 5:16-CV-01183-SK, 2017 WL 8220233, at *3 (C.D. Cal. Apr. 17, 2017) (finding ALJ erred in failing to explain why RFC assessment did not adopt consultative psychiatrist's opined moderate limitations completing a normal workday or workweek due to Plaintiff's mental condition); *Burley v. Berryhill*, No. 2:16–cv–485–EFB, 2017 WL 3172983, at *4 (E.D. Cal. July 26, 2017) ("While the ALJ purported to give substantial weight to Dr. Kalman's opinion, the ALJ omitted from her RFC determination any limitation regarding plaintiff's ability to interact with co-workers and supervisors, a limitation specifically assessed by Dr. Kalman. Furthermore, the ALJ's RFC determination assumes no impairment in plaintiff's ability to perform such interactions. Thus, the ALJ rejected Dr. Kalman's opinion in that regard, but did so without any reason, much less a specific and legitimate one. This constitutes reversible error."); *Jackson v. Colvin*, No. EDCV 12–00606–MAN, at *5 (C.D. Cal. May 2, 2013) (finding ALJ erred in failing to proffer any reason for failing to explain the rejection of consultative psychiatrist's opinion that claimant would have mild to moderate limitations with respect to handling normal stresses at work). *See also* TITLES II & XVI: CAPABILITY TO DO OTHER WORK-THE MEDICAL-VOCATIONAL RULES AS A FRAMEWORK FOR EVALUATING SOLELY NONEXERTIONAL IMPAIRMENTS, SSR 85-15, 1985 WL 56857, at *5–6 (S.S.A. 1985) (emphasizing that mentally impaired people often "have difficulty accommodating to the demands of work and work-like settings" and thus "[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment").

The Commissioner argues that the ALJ's limitation to simple, repetitive work and only occasional contact with the public adequately "accommodated" all of Plaintiff's limitations. (Doc. 12 at 13.) Contrary to the Commissioner's suggestion, an inability to appropriately interact with or respond to criticism from supervisors and coworkers, for example, is distinct from an inability

9

to interact with the public. Indeed, the Social Security regulations treat the abilities to respond appropriately to "supervision" and to get along with "coworkers" as aspects of the "basic mental demands" of unskilled work, noting that the "substantial loss of ability to meet" any basic mental demand could "severely limit the potential occupational base." 20 C.F.R. § 404.1545(a)(1); SSR 85-15 at *4. *See Hunter v. Colvin*, 2015 WL 501466, at *1 (C.D. Cal. Feb. 5, 2015) (RFC limiting claimant's contact with the public did not account for physician's opinion that claimant was limited in ability to interact with co-workers and supervisors). The cases on which the Commissioner relies in support of his argument are distinguishable because they concern whether it was harmless error that the ALJ failed to address findings of mild to moderate limitations in social functioning, concentration, and/or persistence where the RFC included a limitation to simple, repetitive tasks. (*See* Doc. 12 at 13–14.) In contrast, Dr. Barnes' opinion went well beyond moderate impairments in these areas. (*See* AR 910 (opining that Plaintiff *moderate to severe* difficulty dealing with stress encountered in the workplace)) (emphasis added).

On the present record, the Court cannot determine that the ALJ's error in failing to discuss the reasons she rejected these limitations was harmless. *See Molina*, 674 F.3d at 1115 ("[A]n ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination.") (citations and quotations omitted); *see also Thompson v. Astrue*, No. ED CV 12–265–E, 2012 WL 4513724, at *4 (C.D. Cal. Oct. 2, 2012) (holding ALJ's error in failing to discuss consultative psychiatrist's opinions regarding mild to moderate limitations completing complex tasks, handling normal stresses at work, and completing a normal work week without interruption not harmless where RFC was limited to moderately complex tasks up to four to five steps). Dr. Barnes stated that Plaintiff would have moderate limitations in her ability to accept instruction from supervisors or others and to interact with coworkers and/or the public, moderate difficulties in completing a normal workweek without interruption from a psychiatric condition, and moderate to severe limitation in managing stressors in the workplace. (AR 391–92.) The vocational expert did not testify that a person could work with the moderate limitations Dr. Barnes found to exist. (*See* AR 67–70 (vocational expert's testimony).) The vocational expert did testify, however, that if a person with the limitations the ALJ found to exist were off task at least 25 percent of the time or would miss

10

1 | more than two days of work per month on a consistent basis, the person would not be able to do
2 | any jobs in the labor market. (AR 69–70.) Accordingly, remand is warranted on this issue. *See,*
3 | *e.g.*, *Devery v. Colvin*, Case No. CV 15-08503-RAO, 2016 WL 3452487, at *5 (C.D. Cal. June 22,
4 | 2016) (court could not determine harmlessness of ALJ's failure to discuss reasons she rejected
5 | limitations because VE did not testify that a hypothetical person with those limitations could work);
6 | *Dunlap v. Astrue*, No. CIV S–09–3446 EFB, 2011 WL 1135357, at *6 (E.D. Cal. Mar. 25, 2011)
7 | (court could not determine harmlessness of error because it was unable to "determine how the VE
8 | would have responded if he had been given a hypothetical containing [examining physician]'s
9 | actual opinion.").

## B. The Court Declines to Determine Plaintiff's Remaining Assertions of Error

Having found that remand is warranted, the Court declines to address Plaintiff's remaining arguments that the ALJ erred in rejecting medical opinion evidence with respect to Plaintiff's alleged left wrist impairment. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Newton v. Colvin*, No. 2:13–cv–2458–GEB–EFB, 2015 WL 1136477, at *6 n.4 (E.D. Cal. Mar. 12, 2015) ("As the matter must be remanded for further consideration of the medical evidence, the court declines to address plaintiff's remaining arguments."); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

## C. Remand for Further Proceedings is Appropriate

When an ALJ commits error that is not harmless, "[t]he decision whether to remand for further proceedings or simply to award benefits is within the discretion of [the] court." *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989) (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)). Because further administrative review could remedy the ALJ's error, remand for further administrative proceedings, rather than an award of benefits, is warranted here.[5] *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (remanding for an award of benefits is appropriate in

---

[5] Plaintiff concedes the error identified above can be remedied with further proceedings. (*See* Doc. 11 at 12.)

11

1 rare circumstances). *See also Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981) ("If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded."); *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) ("Remand for further administrative proceedings is appropriate if enhancement of the record would be useful."). Before ordering remand for an award of benefits, three requirements must be met: (1) the Court must conclude that the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the Court must conclude that the record has been fully developed and further administrative proceedings would serve no useful purpose; and (3) the Court must conclude that if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Brown-Hunter*, 806 F.3d at 495 (citations omitted). Even if all three requirements are met, the Court retains flexibility to remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id*. (citation omitted).

Here, remand for further administrative proceedings is appropriate. On remand, the ALJ shall reconsider the opinion of Dr. Barnes' regarding Plaintiff's moderate and moderate-to-severe limitations, and either credit her opinion or provide specific and legitimate reasons supported by substantial evidence for rejecting it. The ALJ shall also consider the medical evidence of Plaintiff's alleged medical determinable impairments (including that pertaining to her left wrist) and, if necessary, reassess Plaintiff's RFC, considering the entirety of Dr. Barnes' opinion, as well as the other medical evidence. The ALJ shall then proceed through steps four and five to determine what work, if any, Plaintiff is capable of performing.

## V. CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Terrie Jo Flores and against Defendant Andrew Saul, Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **January 30, 2020** /s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE